## ELLA WILLIAMS *vs.* JOHN P. SMITH, Trustee.

S. held certain real estate upon trust under the will of H. to pay the rents and profits to W. during his lifetime and to convey it in fee simple to his children after his decease. W. during his life assigned to S. for the benefit of his creditors a building on said premises not subject to the trusts of the will. It was afterwards destroyed by fire, and S. built another in its place. *Held*, that S. could not charge the estate with the money expended in building the same, but might remove it from the trust estate before conveying the latter to the children of W.

*Held, further,* that S., who had during the lifetime of W. made advances out of his own moneys for the support of W.'s infant child, should be allowed the benefit of a charge for the same upon the trust estate, it appearing that under the circumstances of the case, the court would have permitted the charge if its sanction had been previously requested.

*Held, further,* that S. was entitled to be allowed out of the trust estate a claim for moneys paid to counsel employed to procure authority to sell a portion of the trust estate, to raise the means for making improvements thereon and paying debts.

BILL IN EQUITY. The facts appear in the opinion of the court.

*D. B. Potter*, for the complainants, cited the following authorities to the following points: 1st. A tenant of a life estate cannot claim for improvements upon the estate or remove them, 1 Washburn on Real Prop. *95, *114. 2d. A life tenant cannot make the estate in remainder liable for any debt he may contract. 1 Hill on Trustees, *401, *574. 3d. Trustees are not authorized to make improvements, unless they are invested with general powers of management. 1 Hill on Trustees, *394, *429, *571. 4th. Trustees cannot claim for personal services. 1 Hill on Trustees, *857; Story's Eq. Juris. § 1268.

*B. F. Thurston*, for the respondent, to the point that trustees are entitled to reimbursement for moneys advanced by them in good faith to take up incumbrances and to protect the estate from decay, and on general principles, are entitled to reimbursement for moneys expended in improving the property in like

good faith, which was necessary to the comfortable maintenance of the life tenant and his family, and the benefit of which improvements the persons in remainder will enjoy, cited *Watts* v. *Watts & another*, 2 McCord Ch. 82; *Myers* v. *Myers*, Ibid. 255, 264; *Murray* v. *De Rottenham*, 6 Johns. Ch. 62, 67; *Attorney General* v. *Mayor of Norwich*, 2 Myl. & C. 406.

DURFEE, J. This is a suit in equity commenced by Rosabella A. and Ella F., infant daughters of the late Charles A. Williams, by Frederick Burgess, their guardian and next friend, against the defendant, as trustee under the will of the late Hepzibeth Williams, who was the mother of the said Charles A. Williams. The suit is heard on bill and answer, and is now prosecuted by the said Ella alone, the defendant having settled with Rosabella, who has become of full age since the suit commenced. The bill prays for an account, and for a conveyance to the infant plaintiffs of certain real estate held by the defendant, under the will of the said Hepzibeth, upon trust to pay the rents and profits thereof to the said Charles A. Williams during his lifetime, and to convey the same in fee simple, after his decease, to his children. The defendant, in his answer, professes his willingness to account and to convey upon being repaid certain moneys for which he claims the right to charge the trust estate. Upon the propriety of some of these charges we are asked to decide, others of them being undisputed. The disputed charges are three: to wit, *first*, for moneys advanced for the rebuilding a house on the trust estate; *second*, for moneys expended in the support of Charles A. Williams and his family; and *third*, for moneys paid for counsel fees.

1. The defendant alleges in his answer that there was upon the land devised to him in trust for the said Charles A. Williams and his children a building, in which the said Charles resided at the decease of said Hepzibeth; that between said Hepzibeth and said Charles it was understood and agreed that the building belonged to said Charles,— she having given him a small building which he had changed and erected into a dwelling-house; that at her death the building was considered and treated as the private property of said Charles, though the interest of her estate therein was appraised at $200, and the estate settled upon that basis; that said Charles, on the 14th December, 1860, being then

in jail for debt, assigned his property to the defendant in trust for his creditors, thereby vesting the title and property in said building in said defendant ; that subsequently the said building was destroyed by fire, and the defendant advanced the sum of $618.07 to rebuild the same, on the faith of his lien thereon ; and the defendant claims, by virtue of said assignment and advances, an equitable lien on said premises to the value of the building, or at least to the extent of the advances aforesaid.

According to this statement the building originally was not subject to the trusts of the will, but was, under the agreement between the said Hepzibeth and the said Charles, his private property, and as such we see no reason why, but for the assignment and fire, he might not have sold or removed the same. *Smith* v. *Benson*, 1 Hill, 176 ; *Shaw* v. *Carbrey*, 13 Allen, 462 ; *Howard* v. *Fessenden*, 14 Allen, 124 ; *Russell* v. *Richards*, 11 Maine, 371 ; *Parsons* v. *Copeland*, 38 Maine, 537 ; *Pullen* v. *Bell*, 40 Maine, 314. If so, under the assignment, the building, together with the equitable estate of said Charles in the land on which it stood, vested in the defendant, and when, having been burned, it was rebuilt, wholly or in part, by money furnished by the defendant, we deem it reasonable to hold, in the absence of any evidence to the contrary, that the new building was designed to replace the old, under the assignment, and that consequently the title to it vests in the defendant as assignee. The defendant, therefore, though he has no lien on the trust estate for money spent in rebuilding, is entitled to remove the building as property separable from the trust estate ; and we think, under the circumstances, it is but equitable that this right should be reserved to him, to be exercised without unnecessary delay, in the decree for the conveyance of the trust estate to the infant plaintiff, —or in other words, that the conveyance shall be decreed expressly without prejudice to his right.

2. The defendant alleges in his answer that, except the building aforesaid in which said Charles resided, there were no improvements on the trust estate, so that the same afforded no income ; that said Charles was without other means, and from sickness became incapacitated to furnish support for his family ; that the city, by reason of the interest which he and his daughters had in the trust estate, refused assistance ; that the defendant,

though he applied, could not procure either from the General Assembly or the Municipal Court authority to sell the fee of any portion of the trust estate ; and that the defendant, under these circumstances, was obliged to advance, from time to time, large sums of money, amounting, in the aggregate, to $898.35, to prevent the said Charles, his wife, and the infant plaintiffs, from actual suffering for the want of medicines and necessaries, and he claims a lien on the trust estate for such advances, or for such equitable proportion as the infant plaintiff received and enjoyed.

The counsel for the plaintiff contends that it was the duty of the plaintiff's father to provide for her support during her infancy, and that therefore the defendant is not entitled to charge the trust estate for money advanced for that purpose. Undoubtedly this would be so, but for the admitted poverty of the father; for the law cannot exact support from a person who is unable to give it, and, in the case of such inability, where there is trust property applicable to the maintenance and education of the infant, the law will sanction its use. *Pearce* v. *Olney*, 5 R. I. 269 ; Perry on Trusts, §§ 614, 615. If in this case there were an express trust for the support of the infant *cestuis que trust*, or any income of the trust estate applicable to their support during the life of the father, there would be no difficulty in making a proper allowance to the trustee for his advances. But here the claim is to charge the *corpus* of the trust estate for advances made for the support of the infant *cestui que trust*, in the absence of any authority to charge it given in the instrument creating the trust, and without the leave of the court previously obtained ; and where such a claim is preferred a proper regard for the protection of the infant requires that the court shall scrutinize the claim with the utmost jealousy, and that it should allow it only in a case of strict necessity, and where there can be no doubt that the leave of the court to charge or apply the principal or *corpus* of the trust estate would have been given if asked for in advance. Even this statement of the rule is more liberal to the trustee than that which is sometimes made ; Perry on Trusts, § 618; but in this case there has been no actual breaking in upon the principal or *corpus* of the estate, the money being advanced by the trustee out of his own funds ; and we see no reason why a trustee making *an advance out of his own moneys* for

the support of his infant *cestui que trust*, should not be allowed the benefit of a charge for the same upon the trust estate in any case where it is clear that the court would have permitted the charge, if its sanction had been previously requested. *Long* v. *Norcom*, 2 Ired. Eq. 354; *Bridge* v. *Brown*, 2 Y. & C. C. C. 181; *Barlow* v. *Grant*, 1 Vern. 255; *Matter of Bostwick*, 4 Johns. Ch. 100; Lewin on Trusts, 517. In such a case the risk falls upon the trustee and not upon the *cestui que trust*, as it would if the trustee should assume to sell or mortgage the trust estate, which, whether he could properly do without the previous sanction of the court, we need not decide.

In this view of the law, the question for us to decide is whether the trustee has done at his own risk anything more than the court would have authorized him to do, if its instruction had been asked beforehand; and, taking the facts to be as stated by the trustee in the answer, we have no hesitation in deciding this question in his favor. In making this allowance in favor of the trustee, however, we are not prepared to exceed the amount which is strictly proportionate to the benefit individually received by the plaintiff, in whose behalf the suit is prosecuted, to be ascertained by a master if it cannot be agreed upon by the parties.

3. The third claim which the defendant asks to have allowed to him is a small claim for moneys expended in payment for the services of counsel employed to procure an authority to sell a portion of the trust estate to raise the means of making improvements thereon and paying debts. We see no reason to doubt that the trustee, in pursuing this purpose, was acting in entire good faith with a view to the best interests of all concerned, and therefore, except as to that part of the claim incurred on the application to the court of probate, we think that any small portion of the residue of the claim which may equitably be regarded as the plaintiff's share thereof may be properly allowed to him, — this also, unless the parties can agree upon the sum, to be referred to the master to ascertain. *Decree accordingly.*