GEORGE TRIMBLE *vs.* T. L. DODD, Guardian, and others.

October Term, 1875.

GUARDIAN—FAILURE TO MAKE SETTLEMENTS—COMPENSATION.—A guardian who has been removed because of his failure to make settlements as required by law is not entitled to any allowance for his services.

GUARDIAN—PARENT—ALLOWANCE FOR MAINTENANCE OF WARD.—A father who is without the necessary means to maintain his children according to their future expectations, or whose income is smaller than that of his chil-

dren, may be allowed for their future, and, under circumstances, for their past maintenance.

REFERENCE BEFORE HEARING BY CONSENT—EFFECT.—Although the court has no power to make a reference for an account before the hearing of a cause, the parties may consent to such a reference, and will be bound by the concessions therein made.

*J. L. Rice*, for complainant.

*T. L. Dodd*, for defendants.

THE CHANCELLOR :—Bill filed by the father and late guardian of his three children, against the children and their present guardian, for a settlement of his accounts, and to be allowed for the board and clothing of the children during his guardianship, and for expenditures necessarily incurred in the discharge of his duties. The complainant is a negro, and was the guardian of his children for six years, from 1865 to 1871, when he was removed for failing to make settlements as required by law. His excuse for such failure is that the clerk of the county court would not settle with him without vouchers, and he had neglected, from ignorance, to take receipts generally, and the receipts actually taken were accidentally lost. The parties, without bringing the case on regularly to a hearing, had a decree entered directing the master to take and state an account of the expenditures made by complainant for his wards, without reserving any matter, either of law or fact. The master has, accordingly, taken an account of the moneys which came to the hands of the complainant as guardian, consisting of the rents of realty to the amount of about $425 per annum, and of the disbursements made for the benefit of his wards, consisting of taxes and repairs, counsel fees for a partition of the land, and board and clothing for each of the children. The complainant has excepted to the report, because the master has not allowed him compensation for his services. The present guardian excepts to the report, because the complainant is allowed for the board and clothing of his children, when it was his duty to board and clothe them himself, and because the master has allowed the *corpus* of

the estate to be broken in upon to the extent of $175, being a balance found due to the complainant over the rents received.

The complainant's exception must be disallowed, for he is clearly not entitled to compensation, having failed to make settlements as required by law, and having been removed from the guardianship for this reason. It would never do to condone such neglect of duty upon the plea of ignorance. No person should undertake a fiduciary trust who does not know what its duties are, and, if he does, he must take the consequences.

The old rule undoubtedly was that the parent should support his children, and could not, as guardian, claim an allowance for their board and clothing. *Hughes* v. *Hughes*, 1 Bro. C. C. 387. But this rule has long since been relaxed, Lord Thurlow himself, who decided *Hughes* v. *Hughes*, having changed his opinion on the point, as we learn from Sir John Mitford, solicitor general, as *amicus curiæ* in *Hoste* v. *Pratt*, 3 Ves. 733. If the father be without the necessary means to maintain his children according to their future expectations ; or, if he have the means, but the income of the children is larger than his own, the modern usage is to make an allowance to the parent for maintenance. *Roach* v. *Garvan*, 1 Ves. 160 ; *Jervoise* v. *Silk*, Coop. Eq. 52 ; *Simon* v. *Barber*, Taml. 22 ; *Matter of Bostwick*, 4 Johns. Ch. 104 ; *Matter of Burke*, 4 Sandf. Ch. 617 ; *McKnight* v. *Walsh*, 8 C. E. Green, 136 ; *s. c.*, 9 C. E. Green Ch. 498 ; *Myers* v. *Myers*, 2 McCord Ch. 255. The old rule, too, was to make no allowance for past maintenance. *Hill* v. *Chapman*, 2 Bro. C. C. 231 ; *Andrews* v. *Partington*, 3 Bro. C. C. 60 ; *s. c.*, 2 Cox, 223. But this rule has also been relaxed. *Collis* v. *Blackburn*, 9 Ves. 471 ; *Maberly* v. *Turton*, 14 Ves. 500 ; *Wilkes* v. *Rogers*, 6 Johns. Ch. 566.

In this case the proof is ample to show the reasonableness of the expenditures allowed by the master, but does not, except vaguely and indirectly, disclose the pecuniary con-

dition of the parent. Perhaps it was supposed the court would judicially know, as matter of history, that the race to which the complainant belongs had only recently been emancipated, and was notoriously improvident. The presumption of narrow income may not be too violent in this case, in view of the incidental light thrown on the point by the testimony. It must be understood, however, that past maintenance creates no debt, and that the burden of proof is upon the parent to establish, on a special case made, such a state of facts as entitles him to an allowance out of the income of his children, and the proof should be clear, where the allowance is at all extravagant. *Ex parte Bond*, 2 Myl. & K. 439 ; *Presley* v. *Davis*, 7 Rich. Eq. 105. The evidence in this case is that the complainant, being a widower, did employ a woman to take charge and care of the children, at an expense of $180 a year, which is one-half of the whole annual allowance made by the master, and that he furnished them with provisions and fuel in addition. I cannot see that the master has erred in this regard.

I held, in *Cohen* v. *Shyer*, 1 Tenn. Ch. 192, that a guardian will not be permitted to trench upon the capital of his ward without, upon proper proceedings, showing the necessity, and obtaining the sanction of the court in advance, or in ratification. No such necessity is shown to have existed in this case. The exception based upon this ground would, therefore, if true in point of fact, be well taken. But the expenditures, as shown by the master's report, only exceed the income by $175, whereas the fee of the solicitor in the partition suit, which would be a proper charge on the *corpus* of the estate, exceeds that sum. *Edwards* v. *Abrey*, 2 Ph. 39 ; *Davis* v. *Turvey*, 32 Beav. 554. Upon the whole, I may conclude with the words of that great equity judge, Sir William Grant, in *Jervoise* v. *Silk* : " In the present case I shall confirm the report upon this ground—that I do not see enough to make me dissent from the conclusion the master has drawn, who, of course, had his attention

directed to the facts and particulars more than the court can possibly have."

I am the less inclined to interfere with the master's rulings from the course which the parties have seen proper to take in this case to obtain them. Instead of having a hearing on the merits, and an adjudication of the principles on which the account should be taken, they chose to agree upon an order of reference without stating on its face that it was by agreement, and without reserving any question for the consideration of the court. Taken as an order of the court, it was clearly erroneous, for the court has no power to make a reference of that character, except by consent of parties, until the cause is ready for hearing and has been regularly heard. *Wessells* v. *Wessells*, 1 Tenn. Ch. 58. The reason is that such a reference involves the merits of the controversy, and the merits cannot be decided *in invitum* until there is a regular hearing. Of this we have a striking example in *Smith* v. *Earl of Pomfret*, 2 Dick. 437, where, upon showing cause for the continuance of an injunction, the Chancellor, Lord Camden, *without consent*, directed an action of trover to be brought in order to try the right, and it was brought, and a verdict found in favor of the plaintiff. Upon appeal, the House of Lords, through Lord Mansfield, took the distinction "that, where the court makes an order *by consent of the parties*, in an early stage of the cause, it operates as if regularly brought to hearing, but that it is otherwise if the order be made without consent," and the cause was reversed upon the ground that the appellant was not bound by the order. The rule is general, that the ultimate object of a decree cannot be obtained on motion, or in advance of a hearing on the merits. *McLin* v. *McNamara*, 1 Dev. & B. Eq. 409; *Eldridge* v. *Porter*, 14 Ves. 139; *Neale* v. *Hagthrop*, 3 Bland, 551; *Harris* v. *Fly*, 7 Paige, 423; *McCaskill* v. *McBryde*, 2 Ired. Eq. 52; *Hampton* v. *Pollard*, 4 Hen. & M. 451; *Cutting* v. *Carter*, 4 Hen. & M. 478.

The effect, however, of such an order in the court in

which it is entered, whether improperly rendered by the court itself, or made by consent without stating on its face the fact of consent, is another question. This point was considered by the supreme court of North Carolina, in *McLin* v. *McNamara*, 1 Dev. & B. Eq. 409, upon an appeal from the refusal of the Chancellor to make the reference. Ruffin, J., one of the eminent jurists of our mother state, in delivering the opinion of the court, says : "A reference to take an account, upon a bill whose sole object is to get such an account, is a peremptory adjudication of the defendant's liabilities, according to the result as it may be found by the master, and over-rides all the bars set up in the answer ; so far, at least, as to prevent the bill from being afterwards dismissed. If it be said that the reference was to be without prejudice, the reply is obvious, that, as an order of the court *in invitum*, such an order is incongruous and absurd, since it professes to preserve that for future adjudication which, by the import of the same order, has been already determined. The parties may consent to such a proceeding for the purpose of speeding the cause ; and the court may require, in a proper case, such consent from a party as a condition on which a favor may be granted to him. But, without consent, the court can never make such an order. Attempts have been made, upon the pretence of a loose practice in our courts, to escape from the consequences of a reference by treating the case as still open to the equity of the defendant ; but such attempts have not been sustained by this court. *Bruce* v. *Child*, 4 Hawks, 372. It is deemed safe and proper to adhere to the established rules and practice of courts of equity." It is obvious that the learned judge was of opinion that such an order of reference, previous to the hearing, would conclude rights. And see *Dillard* v. *Harris*, 2 Tenn. Ch. 196.

The reference in this case, although in reality by consent, was in form a decree of the court, without any reservation. It became, upon the adjournment of the term, conclusive upon the parties, and passed beyond the control of the

court. It settled that the complainant was entitled to an account, and, in effect, to have the expenditures made by him for the benefit of his wards ascertained and allowed. The only ground, strictly, upon which exception could be taken would be whether the expenditure found was for the benefit of the ward. The defendants could not object that the complainant was entitled to no allowance whatever, for the order conceded that there were such expenditures. And, yet, that is precisely what the defendants attempt to do by their exceptions. They insist that "expenditures for the benefit" of the wards should not be allowed, because the guardian was bound, as the father of the wards, to make these expenditures out of his own means. It is obvious that grave doubts may exist as to the power of the court thus to go behind its order. *Hicks* v. *Chadwell*, 1 Tenn. Ch. 257. Moreover, the master ought not to be required to go through long and complicated accounts upon such references, to be set aside upon a point of law which should have been made in advance. The practice is dangerous to the rights of the parties, and in every way objectionable. *Van Lew* v. *Parr*, 2 Rich. Eq. 328.

The early ordinances of the chancery court, it need scarcely be said, are in accord with the rulings of the courts. Lord Bacon's ordinance No. 50 is in these words: "Matters of account, unless it be in very weighty causes, are not fit for the court, but to be prepared by reference, with this difference, nevertheless, that the cause comes first to a hearing, and, upon the entrance into a hearing, they may receive some direction, and be turned over to have the accounts considered, except both parties, before a hearing, do consent to a reference of the examination of the accounts to make it more ready for a hearing." And the 21st ordinance of Lord Keeper Coventry is as follows: "No references are to be made, either to masters or others, unless it be by assent on both sides, to hear and determine the cause upon all the proofs, or otherwise. But when the court hath heard it, and reduced it to particular points, especially if

those points have relation to account, or matter of that nature, the court may fitly leave such to be reduced to certainty by a master." Beames' Orders, 23, 80.